**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **JUSTIN M. DAVENPORT, #S07433,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 25-cv-01912-SMY** |
| | ) | |
| **MEGAN SZOPINSKI,** | ) | |
| **JOHN BARWICK,** | ) | |
| **KARALES (Warden 2),** | ) | |
| **CHRISTIAN THOMAS,** | ) | |
| **OFFICER VAUGHN,** | ) | |
| **GREGORY D. LITTLE,** | ) | |
| **LATOYA HUGHES, and** | ) | |
| **NURSE SARAH,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM AND ORDER</u>

**YANDLE, Chief Judge:**

Plaintiff Justin M. Davenport, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Pinckneyville Correctional Center, filed the instant lawsuit pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights.  He claims defendants failed to prevent his exposure to second-hand smoke from his cellmates, in violation of the Eighth Amendment and the Rehabilitation Act ("RA"), 29 U.S.C. § 701, *et seq*.  Plaintiff seeks a TRO and monetary damages.  (Doc. 1).

This case is now before the Court for preliminary review of the Complaint under 28 U.S.C. § 1915A, which requires the Court to screen prisoner Complaints to filter out nonmeritorious claims.  28 U.S.C. § 1915A(a).  Any portion of the Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed.  28 U.S.C. § 1915A(b).

1

**The Complaint**

Plaintiff makes the following allegations in the Complaint (Doc. 1): Plaintiff has been housed at Pinckneyville with multiple cellmates who smoked papers containing substances such as roach spray, fentanyl, and/or K2 (Doc. 1, p. 7). The smoke exposure gave Plaintiff horrible anxiety and a "contact high" that made him dizzy and caused him to vomit (Doc. 1, p. 8). Plaintiff is a drug addict who went through detox before coming to prison and has stayed sober through his entire imprisonment. He wants to stay sober after his release. He suffers from bipolar disorder, major depressive disorder, PTSD, and seizures. When he sought help for seizures, Defendant Nurse Sarah gave him "little to no help" and accused him of smoking (Doc. 1, p. 9).

Plaintiff begged mental health providers to move him away from the smokers, which succeeded once for a limited time until he got another cellmate who smoked (Doc. 1, p. 7). Plaintiff purposely violated a rule so he would be sent to segregation and get away from the smoke. Before his segregation term ended, Plaintiff wrote to Defendant Szopinski (mental health provider), telling her if he was housed with another smoker, he would harm that person to get away. In response, Szopinski visited Plaintiff who was single-celled at the time. He confirmed to Szopinski he would hurt someone if he was assigned a cellmate who smoked.

On May 2, 2025, Plaintiff was housed with a smoker (Doc. 1, p. 7). Plaintiff went for a sick call on May 4, 2025 and spoke with Szopinski. He reminded her of his letter, told her he was given another smoker as a cellmate, and stated he would hurt somebody. Szopinski asked him to give her 24 hours, which Plaintiff rejected. Later that night, Plaintiff got into a fight and injured the other inmate. Officers used pepper spray on Plaintiff to stop the altercation and returned him to segregation (Doc. 1, p 8). Plaintiff did not want to hurt the person but felt it was necessary to show how badly he wanted to escape the smoke. He wants to remain mentally and physically safe,

2

thus he has refused to leave segregation.

Plaintiff wrote Szopinski again on May 9, 2025 to say "it will only get worse" if she keeps giving him cellmates who smoke (Doc. 1, p. 8). On May 15, 2025, he wrote Mental Health again stating he would do whatever was necessary for his own well-being including refusing to leave segregation until his release date of March 26, 2026. He wrote Defendants Warden Barwick, Karales (Warden 2), and "I.A." (Plaintiff identifies Defendants Christian Thomas and Officer Vaughn as Internal Affairs staff (Doc. 1, p. 3)) informing them he refused to leave segregation because the conditions of his confinement – fumes and second-hand smoke – violated his rights and harmed his mental and physical health (Doc 1, p. 8). He personally handed letters to Szopinski and Defendant Lt. Gregory Little to explain his refusal to leave segregation.

Plaintiff wrote grievances complaining about smoke coming through the vents to his cell and causing anxiety attacks. Defendants Hughes denied a grievance (Doc. 1, p. 9).

Based on the allegations in the Complaint, the Court designates the following claims in this *pro se* action:

| | | |
|---|---|---|
| Count 1: | Eighth Amendment claim against defendants for housing Plaintiff in unconstitutional conditions of confinement where he is exposed to second-hand smoke from various chemical substances. | |
| Count 2: | Eighth Amendment deliberate indifference to serious mental health/medical needs claim against Szopinski for failing to protect Plaintiff from second-hand smoke exposure that exacerbates his mental health conditions. | |
| Count 3: | Rehabilitation Act claim against defendants for failing to accommodate Plaintiff's mental health conditions by mitigating his exposure to second-hand smoke. | |

Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a

3

claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

## **Discussion**

### **Count 1**

Prison conditions that deprive inmates of basic human needs (food, medical care, sanitation, or physical safety) may violate the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); s*ee also James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992). To state an Eighth Amendment claim for unconstitutional conditions of confinement, Plaintiff must plead facts suggesting he was denied "the minimal civilized measure of life's necessities," creating an excessive risk to his health or safety (the objective element). *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). He must also sufficiently plead that the defendant exhibited deliberate indifference to a substantial risk of serious harm to him, despite the defendant's knowledge of the conditions. *Farmer*, 511 U.S. at 837, 842. For a defendant to be personally liable under § 1983, the individual "must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005).

Involuntary exposure to second-hand tobacco smoke in prison may support an Eighth Amendment claim for present injury and/or future injury to the prisoner's health. *See Helling v. McKinney*, 509 U.S. 25 (1993); *Henderson v. Sheahan,* 196 F.3d 839, 845 (7th Cir. 1999); *Glick v. Walker*, 272 F. App'x 514, 518 (7th Cir. 2008). Exposure to second-hand smoke from other potentially dangerous substances may likewise state a claim.

Plaintiff alleges he informed Szopinski, Barwick, Karales, Thomas, Vaughn, and Little about the dangerous effects on him from the exposure to smoke and fumes, but these defendants

4

did not act to mitigate the risk to him. These allegations state a viable Eighth Amendment claim against these defendants.

However, Plaintiff does not indicate that he requested help from Nurse Sarah to escape the effects of the smoke; only that he sought her help for his seizures. Nurse Sarah will therefore be dismissed from Count 1. IDOC Director Hughes will also be dismissed from this claim as her only involvement was denying Plaintiff's grievance. The alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011).

The claim in Count 1 will proceed only against Szopinski, Barwick, Karales, Thomas, Vaughn, and Little.

### Count 2

Prison medical and mental health staff violate the Eighth Amendment's prohibition against cruel and unusual punishment when they act with deliberate indifference to a prisoner's serious medical/mental health needs. *Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017). To state such a claim, a prisoner must plead facts suggesting (1) he suffered from an objectively serious medical condition, and (2) the defendant acted with deliberate indifference to his medical needs. *Id.* An objectively serious condition includes a condition that significantly affects an individual's daily activities or which involves chronic and substantial pain. *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997).

Plaintiff's allegations that Szopinski took no action after Plaintiff informed her of the harmful effects of the smoke exposure on his mental health conditions are sufficient to state a claim for deliberate indifference against her in Count 2.

5

**Count 3**

Plaintiff's allegations may support a viable RA claim. However, because individual employees of IDOC cannot be sued under the ADA or the RA, this claim cannot proceed against the individual defendants. *Jaros v. Illinois Dep't of Corrs*, 684 F.3d 667, 670 (7th Cir. 2012). The proper defendant is the relevant state department or agency. *See* 42 U.S.C. §12131(1)(b); *Jaros*, 684 F.3d at 670, n. 2 (individual capacity claims are not available; the proper defendant is the agency or its director, in his/her official capacity). Plaintiff includes IDOC Director Latoya Hughes as a defendant, and the RA claim in Count 3 may proceed against her in her official capacity only. All other defendants and any claim against Hughes in her individual capacity are dismissed from Count 3.

**Injunctive Relief**

Because the Complaint includes a request for injunctive relief, Pinckneyville Warden Barwick will remain as a defendant in his official capacity regarding this request. *See Gonzales v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (warden is proper defendant for injunctive relief claim as he would be responsible for ensuring that any injunctive relief would be carried out). As noted above, Count 1 will also proceed against Barwick in his individual capacity.

**Official Capacity Claims**

Plaintiff raises claims against each defendant in his or her individual and professional/official capacities (Doc. 1, p. 9). The RA claim is properly brought against IDOC Director Hughes in her official capacity. However, Plaintiff's claims for monetary damages may only be pursued against state officials in their individual capacities. *Brown v. Budz*, 904 F.3d 904, 918 (7th Cir. 2005); *Shockley v. Jones*, 823 F.2d 1068, 1070 (7th Cir. 1987). Accordingly, the official capacity claims against the remaining individual defendants (with the exception of

6

Barwick) are dismissed without prejudice.

### Disposition

The Complaint states colorable claims in Count 1 against Szopinski, Barwick, Karales, Thomas, Vaughn, and Little; in Count 2 against Szopinski; and in Count 3 against Hughes in her official capacity as the IDOC Director.  Nurse Sarah is **DISMISSED** without prejudice.

The Clerk shall prepare for Megan Szopinski, John Barwick (in his individual and official capacities), Karales, Christian Thomas, Officer Vaughn, Gregory D. Little, and Latoya Hughes (official capacity only): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).  **Pursuant to Administrative Order No. 244 and Local Rule 8.2, Defendants need only respond to the issues**

7

**stated in this Merit Review Order**.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. §1915, he will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

Finally, based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

**IT IS SO ORDERED.**

**DATED:  June 8, 2026**

**STACI M. YANDLE**
**Chief U.S. District Judge**

**Notice to Plaintiff**

The Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, Defendants will enter an

appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the Defendants' Answer, but it is entirely possible that it will take **90 days** or more. When Defendants have filed their Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.